IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| JA'AVIER C., § | |
|    PLAINTIFF, § | |
| § | |
| V. § | CIVIL CASE NO. 3:18-CV-2374-D-BK |
| § | |
| COMMISSIONER OF § | |
| SOCIAL SECURITY ADMINISTRATION, § | |
|    DEFENDANT. § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636 and *Special Order* 3, this case was referred to the undersigned United States magistrate judge for pretrial management, including making findings and a recommended disposition. As detailed here, *Plaintiff's Motion for Summary Judgment*, Doc. 21, should be **DENIED**, *Defendant's Motion for Summary Judgement*, Doc. 22, should be **GRANTED**, and the Commissioner's decision should be **AFFIRMED**.

**I. BACKGROUND**

**A. Procedural History**

Plaintiff seeks judicial review of the final decision of the Commissioner denying his claim for disability insurance benefits and supplemental security income under Title II of the Social Security Act ("Act"). Plaintiff applied for benefits in April 2015, alleging that he had been disabled since January 2015 due to depression. Doc. 18-1 at 25. Plaintiff's claim was denied at all administrative levels, and he now appeals to this Court pursuant to 42 U.S.C. § 405(g); Doc. 18-1 at 25.

**B. Factual Background**

Plaintiff was 54 years old at the time of the administrative hearing. Doc. 18-1 at 44. He has a tenth-grade education and past relevant work experience as a semi-truck driver for 15 years. Doc. 18-1 at 45-46; Doc. 21 at 1. Plaintiff testified that for the past four years, he is "depressed all the time," has "real bad anxiety," cannot sleep or eat, and "can't remember" or "concentrate on anything." Doc. 18-1 at 44-45. Plaintiff also testified that he stopped working because he was incarcerated upon conviction for felony possession of cocaine. Doc. 18-1 at 56. Plaintiff has been incarcerated on numerous occasions for drug-related offenses, although he could not recall the dates. Doc. 18-1 at 56. Plaintiff stated that he hears the voices of deceased relatives telling him to do bad things, but that he tries to resist. Doc. 18-1 at 49. According to Plaintiff, he has no physical problems but is unable to work because he "couldn't ever get up to be there on time." Doc. 18-1 at 53.

The medical evidence reveals that Plaintiff received mental health treatment from Dallas MetroCare from January 2015 to November 2016. Doc. 18-1 at 280, 427. During the initial visit, Plaintiff "exhibited catatonia," and his mother provided information. Doc. 18-1 at 331. She reported that Plaintiff had never been diagnosed with any mental illness or retardation. Doc. 18-1 at 290. She also stated that upon Plaintiff's release from prison in April 2014, she noticed a change in his behavior. Doc. 18-1 at 331. Plaintiff would respond to voices only he heard and saw things that were not there. Doc. 18-1 at 331.

Plaintiff's primary diagnosis from Dallas MetroCare was Major Depressive Disorder, Recurrent Episode with Psychotic Features, for which he was prescribed several medications. Doc. 18-1 at 365. Despite the diagnosis, at appointments, Plaintiff was consistently noted to be adequately groomed, cooperative and organized in his thoughts, have intact memory, and be

fully oriented. Doc. 18-1 at 295, 298-99, 308-09, 313-14, 318-19. Additionally, Plaintiff reported no physical limitations during his numerous medical visits, Doc. 18-1 at 295, 298-99, 308-09, 313-14, 318-19, and he continued to dress, toilet, and bathe himself, take his seven-year-old daughter to the park by himself, and go shopping with his mother and sister, Doc. 18-1 at 331.

At the start of Plaintiff's care, he reported depression and minimal auditory hallucinations while denying suicidal/homicidal ideations and aggressive behavior. Doc. 18-1 at 296. By November 2015, Plaintiff reported a slight improvement in his depression. Doc. 18-1 at 439. Plaintiff also reported enjoying time with his daughter and that he was doing well on medication, even though he stressed over unpaid child support payments. Doc. 18-1 at 436, 438-39.

## C. The ALJ's Findings

In August 2017, the administrative law judge ("ALJ") found that Plaintiff had the severe impairments of major depression disorder, recurrent episode with psychotic feature, cocaine dependence, catatonic disorder, and anxiety. Doc. 18-1 at 27. The ALJ held:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: He is able to understand and remember and apply simple instructions and concentrate and persist for extended periods in order to make simple decisions and complete simple work tasks with routine supervision, He is able to maintain superficial relationships with coworkers and supervisors and the general public but would have no work-related contact with the general public.

Doc. 18-1 at 28. In so finding, the ALJ discussed at length the medical evidence, including several instances when Plaintiff was not compliant with his medication regimen. Doc. 18-1 at 29-33. Relying on the testimony of a vocational expert, the ALJ concluded that Plaintiff could perform the duties required of an industrial sweeper/cleaner, floor waxer, and conveyor feeder; and, thus, was not disabled within the meaning of the Act. Doc. 18-1 at 33-34.

## II.  APPLICABLE LAW

An individual is disabled under the Act if, *inter alia*, he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or can be expected to last for at least twelve months.  42 U.S.C. § 423(d)(1)(A).  The Commissioner uses the following sequential five-step inquiry to determine whether a claimant is disabled: (1) an individual who is working and engaging in substantial gainful activity is not disabled; (2) an individual who does not have a "severe impairment" is not disabled; (3) an individual who "meets or equals a listed impairment in Appendix 1" of the Regulations will be considered disabled without consideration of vocational factors; (4) if an individual is capable of performing his past work, a finding of "not disabled" must be made; and (5) if an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and RFC must be considered to determine if any other work can be performed.  *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (per curium) (summarizing 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b)-(f)).

Under the first four steps of the analysis, the burden of proof lies with the claimant. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).  The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled.  *Id.*  If the claimant satisfies his burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant can perform.  *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).  This burden may be satisfied either by reference to the Grid Rules, vocational expert testimony, or other similar evidence.  *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

4

Judicial review of the Commissioner's decision is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan*, 38 F.3d at 236; 42 U.S.C. §§ 405(g), 1383(C)(3). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett*, 67 F.3d at 564. Under this standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236.

In considering the parties' summary judgment arguments, the Court has relied upon their assessment of and citation to the evidence of record. The Court is not under any obligation to probe the record to find supporting evidence for one side or the other. *See* FED. R. CIV. P. 56 (the movant and opponent of a motion for summary judgment must support their positions by "citing to particular parts of materials in the record"); *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (the court has no obligation under Rule 56 "to sift through the record in search of evidence to support a party's opposition to summary judgment") (quotation omitted).

### III. PARTIES' ARGUMENTS AND ANALYSIS

As liberally construed, Plaintiff, who is *pro se*, argues that the ALJ erred in assessing his RFC and the effects of his major depression, anxiety, sleeping disorder, and emphysema. *See* Doc. 21 at 1 ("Plaintiff has been denied relief due to doctors [sic] evaluation. Plaintiff suffers from mental and physical disabilities . . . . Plaintiff has been a victim of identity theft; which was a deciding factor in been [sic] denied social security benefits . . . these conditions persist and [Plaintiff] has been inform [sic] by attending physicians that these conditions will not

5

improve."). Defendant responds that the ALJ properly interpreted the medical evidence in determining Plaintiff's capacity to work, and the records indicate that Plaintiff's medications worked well when he took them. Doc. 22-1 at 5, citing Doc. 18-1 at 30, 361-406 ("the ALJ recognized that [Plaintiff] underwent treatment with therapy and medication . . . . with the treatment [Plaintiff] admitted feeling 'pretty good,' exhibited a depressed mood, flat affect, impaired attention, and poor judgment, but had organized thoughts, intact memory, and fair insight."). Defendant also notes medical evidence that Plaintiff was "cooperative, had normal psychomotor behavior and speech, organized thoughts, intact memory and fair insight," even when he was non-complaint with his medication. Doc. 22-1 at 5. Upon review, the Court concludes that ALJ's decision, including the RFC, is supported by substantial evidence.

The RFC is an assessment, based on all relevant evidence, of a claimant's ability to work, despite his impairments. 20 C.F.R. § 404.1545(a). Stated differently, it is the most a claimant can do, notwithstanding his physical and mental limitations. *Id.* The RFC determination falls solely to the ALJ, who is responsible for resolving any conflicts in the evidence. *See Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001) (per curiam).

Here, contrary to Plaintiff's arguments, Plaintiff's testimony and the medical evidence of record support the ALJ's assessment of Plaintiff's RFC and the effects of his major depression, anxiety, sleeping disorder, and emphysema on his ability to work. For example, during his medical visits, Plaintiff reported no physical limitations, was always adequately groomed, cooperative and organized in his thoughts, and was observed to have intact memory and be fully oriented. *See* Doc. 18-1 at 295, 298-99, 308-09, 313-14, 318-19. Plaintiff also admitted he is physically able to take his seven-year-old daughter to the park by himself and go shopping with his mother and sister. Doc. 18-1 at 29. The evidence further showed that Plaintiff responded

6

well to medication; as such, Plaintiff's failure or unwillingness to take his medication undermines his position. *See Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir. 1988) ("If an impairment reasonably can be remedied or controlled by medication or therapy, it cannot serve as a basis for a finding of disability."). Finally, Plaintiff fails to adequately explain how his being an alleged victim of identity theft constitutes a disability under the Act. *See* Docs. 3 at 3; 21 at 1.

Accordingly, reversal of the Commissioner's decision is not warranted.

## IV.  CONCLUSION

For the foregoing reasons, *Plaintiff's Motion for Summary Judgment*, Doc. 21, should be **DENIED**, *Defendant's Motion for Summary Judgement*, Doc. 22, should be **GRANTED** and the Commissioner's decision should be **AFFIRMED**.

**SO RECOMMENDED** on January 16, 2020.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). An objection must identify the finding or recommendation to which objection is made, the basis for the objection, and the place in the magistrate judge's report and recommendation the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n,* 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).